|¶BROWN, J„
It is undisputed that the purpose for the formation of the limited partnership has ended. What remains is the liquidation and distribution of the partnership’s assets. The business of the partnership was managed solely by the general partner. The general partner did not invoice for services rendered as they were performed but now seeks compensation for its work over the 11 year period of the partnership’s existence. Plaintiffs, the limited partners, appeal a judgment in favor of the general partner recognizing its right to be paid for managing the partnership and attorney fees. Finding no error, we affirm.

Facts and Procedural Background

I. The Partnership
Caldwell Broadcasting Limited Partnership (“the partnership”) was formed in 1987. Its purpose was to apply for a Federal Communications Commission (“FCC”) license, and, if successful, to own and operate a television station in Caldwell Parish, Louisiana. Following the advice of counsel, the partnership was structured such that it was managed by a corporation as its general partner. This corporation was to be owned and operated by women and minorities to enhance the partnership’s chances of obtaining the FCC license. Thus, Caldwell Communications Corporation (“CCC”) was created and its stock was owned by Mary Lou Winters, Clarice Kenney and Betty Robinson.
The partnership agreement provided that: CCC as the general partner was to own a 20% interest in the partnership; the remaining 80% was to owned by the limited partners; both the general and limited partners were required to make capital contributions in accordance with their ownership | ^percentage; and, the business and affairs of the partnership was to be managed solely by the general partner.
The limited partners were Robert F. Meredith, III, Frank Spooner, Kay LaF-rance, John Cooksey, Joseph H. Miller, *259 Cynthia Woodard, and H.I. Schendle.[1]
There were several competing applications filed with the FCC for the license. After approximately 11 years of effort, the partnership had not obtained the license. On January 3-4, 1999, the partnership assigned/sold its application to a competitor for $1,000,000, with the net proceeds of $990,000 going to the partnership.
II. The Petition
On January 6, 1999, plaintiffs[2] filed a petition naming CCC and H.L. Schendle as defendants, seeking an accounting, distribution of the assets and to dissolve the partnership.[3] They also sought and obtained an order sequestering the partnership banking account.
III. The Reconventional Demand
The general partner, CCC, filed an answer and reconventional demand against all of the limited partners. The reconven-tional demand states that: the corporation was formed to conduct the affairs of the [.-¡partnership; the corporation consisted of minority and gender ownership which would enhance the chances of being awarded the FCC license; and throughout the 11 years of “laborious efforts by CCC and its officers,” no compensation was paid. The general partner thus sought compensation for its labors and attorney fees.
IV. The Proceedings
The parties agreed to a distribution of all but $250,000 of the partnership funds.
The Schendle Trusts joined with the other limited partners in a motion for summary judgment. CCC also filed a motion for summary judgment. The parties stipulated that there were no genuine issues of material fact. The issues were whether, under the partnership agreement, the general partner was entitled to compensation and if not, whether the general partner was entitled to compensation on any other basis (quantum meruit and/or unjust enrichment); whether certain expenses paid by CCC from partnership funds were proper (costs associated with the incorporation, annual report, taxes and accounting fees of CCC); and whether CCC was entitled to attorney fees incurred pursuing its claim for compensation.
The trial court held that: the articles of limited partnership recognized the right to compensation by the general partner; the enumerated expenses of CCC were incurred on behalf of the limited partnership; and CCC was entitled to recover attorney fees.[4] Thus, CCC’s motion for summary judgment was granted.

14Discussion

The first issue is whether the Limited Partnership Agreement provides for the payment of fees to CCC for its services. A contract is interpreted according to the common intent of the parties. La. C.C. Art.2045. If the words of a contract are clear and explicit and lead to no absurd consequences, no further interpre *260 tation may be made in search of the parties’ intent. La. C.C. Art.2046.
Section 9.1(b)(iii) of the Limited Partnership Agreement states the following:
To the extent that any fees are paid to the General Partner for service in a Partnership capacity and the amount of any such fee is considered to have been determined with reference to Partnership income within the meaning of Section 707(c) of the Code, such fee shall be treated as a distribution of Partnership income to the General Partner and an equal amount of the taxable income of the Partnership shall be specially allocated to the General Partner.
Section 9.2 states the following:
Net Cash Flow-available from operations and/or funds available for distribution from the sale of all or any part of the Partnership’s assets or business shall be distributed by the General Partner to all Partners in the following manner:
(a) First, to pay all Partnership fees and expenses including payments of fees, if any, to the General Partner or Affiliates or other parties related to the General Partner.
The Partnership Agreement clearly provides for compensation to CCC for its services and it clearly dictates that CCC has priority over the limited partners in the distribution of the proceeds.
|sThe limited partners rely on Section 7.2 of the Partnership Agreement in claiming that it does not allow payment to CCC for its services. The provision states as follows:
The general partner shall not be paid any fee for its services in connection with the management of the Station and the Partnership, provided, however, that the president, vice president, and secretary of the general partner may be paid for their individual services as management-level employees of the Station. (Emphasis added).
The limited partners’ reliance is misplaced. Section 7.2 does not disallow the payment of fees to CCC. Instead, it prohibits the payment of fees for both the management of the station and the management of the partnership. In other words, it prevents CCC from receiving double compensation.
The limited partners next argue that CCC was not entitled to be compensated for its necessary expenses. We find, however, that the trial court was correct in awarding CCC reimbursement for its expenses. Section 6.1 of the Partnership Agreement states that “... the general partner shall be reimbursed by the partnership for all expenses incurred by it in connection with the business of the partnership.” CCC was incorporated for the sole purpose of running the limited partnership. All of CCC’s expenses necessary for its creation and existence were incurred by it relative to the business of the partnership and the Partnership Agreement clearly states that CCC shall be reimbursed for these expenses.
The limited partners next assert that CCC is not entitled to attorney fees in this case. Attorney fees are not recoverable except when authorized by contract or statute. General Motors Acceptance Corp. v. Meyers, 385 So.2d 245 (La.1980).
We agree with the trial court that CCC’s attorney fees in this case are authorized by the Partnership Agreement. Section 6.1 allows the general partner to be reimbursed by the partnership for all expenses incurred by it in connection with the business of the partnership. Since the distribution and liquidation of the partnership clearly are functions delegated to the gen *261 eral partner, legal fees incurred as part of that dissolution or liquidation are recoverable.
Because the Limited Partnership Agreement provides for the payment of fees to CCC, it is not necessary for us to reach the merits of CCC’s claim under the theory of quantum meruit and/or unjust enrichment.

Conclusion

For the reasons set forth above, the trial court’s judgment is AFFIRMED and the matter is REMANDED to the trial court for further proceedings to determine the amount of compensation and legal fees. Costs are assessed to appellants.

. H.I. Schendle, however, assigned his interest to the Ian Schendle Irrevocable Inter Vi-vos Trust and the Frances Elaine Schendle Irrevocable Inter Vivos Trust ("The Schendle Trusts”).

. With the exception of the Schendle Trusts, plaintiffs are the other limited partners.

. The limited partners subsequently filed an amended petition dismissing H.I. Schendle and joining his assignees, Ian Schendle Irrevocable Inter Vivos Trust and Frances Elaine Schendle Irrevocable Inter Vivos Trust, as necessaxy and indispensable parties.

.Although initially stating the amount of recovery, the trial court in an amended judgment deleted that portion of the decision. The matter was certified to this court for appeal.